1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DIONDRE COBB,

                            Plaintiff,

        v.

ALASKA AIRLINES INC,

                            Defendant.

Case No. C20-828 TLF

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

11      This matter comes before the Court on Defendant Alaska Airlines, Inc.'s

12  ("Alaska") Motion for Summary Judgment on Plaintiff Diondre Cobb's claims (Dkt. 41).

13  Mr. Cobb has opposed Alaska's motion (Dkt. 44) and Alaska has filed a reply (Dkt. 48)

14  in support of the motion[1].

15      Mr. Cobb alleges that Alaska:  (i) discriminated and retaliated against him due to

16  a disability in violation of the Americans with Disabilities Act (ADA), and Washington

17  Law Against Discrimination ("WLAD"); (ii) interfered with his use of FMLA leave; (iii)

18  retaliated against him for his use of FMLA leave; and (iv) did not pay him all statutory

19  paid sick leave he was due. Dkt. 1-1.

20
21
22
23

---

[1] Mr. Cobb filed a surreply on January 19, 2022. Because the surreply did not comply with Local Rule
7(g)(2), it has been stricken from the record. Dkt. 55.

24
25

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 1

1    There is no genuine dispute of material facts regarding each of plaintiff's claims.

2    Therefore, the Court GRANTS Alaska's motion for summary judgment. Plaintiff's claims

3    are dismissed with prejudice.

4                      I.    FACTUAL AND PROCEDURAL BACKGROUND

5    Mr. Cobb began working for Alaska on February 5, 2018 as a Customer Service

6    Agent. Dkt. 42, Declaration of Katheryn Garceau, at ¶3. Mr. Cobb was a member of a

7    bargaining unit represented by the International Association of Machinists and

8    Aerospace Workers ("IAMAW"). *Id.* at ¶4. The relevant collective bargaining agreement

9    ("CBA") provided plaintiff with 8 hours of accrued sick leave for each month of his

10   employment, prorated based on the number of hours worked versus vacation, sick

11   leave, or workers' compensation. Dkt. 42, Garceau Decl., at ¶4; Exhibit B.

12   Alaska began applying protected paid sick leave as of January 1, 2018. *Id.* at ¶5.

13   This provided employees, including Customer Service Agents, with one hour of

14   "protected" sick leave for every 40 hours worked. *Id.* Employees would not be

15   disciplined for using protected sick leave. *Id.* at ¶6. If an employee used time off that

16   was taken in excess of their protected sick leave, they would be allowed to use non-

17   protected sick leave accrued under the terms of the CBA. *Id.*

18   The use of non-protected sick leave could result in attendance occurrences that

19   could lead to discipline under the terms of the CBA. *Id.* But, if an employee traded a

20   shift with another qualified employee, they would not be disciplined under the

21   attendance policy and would not use any accrued sick leave. *Id.* at ¶19.

22   Mr. Cobb was issued a formal oral warning for violating Alaska's attendance

23   policy for arriving late to work on March 1, 2018, and again on September 7, 2018 --

24

25

1    and also for being absent on July 7, July 8, July 9, and September 11, 2018. Dkt. 42,

2    Garceau Decl, at ¶8; Exhibit D. In addition, Mr. Cobb was issued a written warning on

3    December 28, 2018 after being absent on November 23, December 10, and December

4    21, 2018. *Id.* at ¶9.

5        On or around February 19, 2019, Mr. Cobb applied for intermittent FMLA leave

6    after disclosing to a supervisor that he had a health condition that may require him to

7    take time off of work. *Id.* at ¶ 12. On February 23, 2019, Alaska approved Mr. Cobb's

8    intermittent FMLA leave for two absences per week from February 16, 2019 until

9    September 26, 2019. *Id.*

10       Pursuant to Alaska's policy, employees and their families cannot use travel

11   privileges while they are on FMLA leave of absence unless they are flying to receive

12   medical treatment. Dkt. 42, Garceau Decl, at ¶¶13-14.

13       Although Mr. Cobb's intermittent FMLA approval was limited -- two days per

14   week -- he was at times absent more than two days a week. *Id.* at ¶ 16. On June 14,

15   2019, Alaska issued Mr. Cobb a final warning based on his failure to comply with

16   Alaska's attendance policies. *Id.* at ¶18; Exhibit J.

17       On July 8, 2019, Mr. Cobb requested to trade his August 9, 2019 shift to Fatima

18   Hameed, another Customer Service Agent. *Id.* at ¶20. Ms. Hameed accepted the trade.

19   *Id.*; Exhibit L. He requested to trade his August 10 shift with another Customer Service

20   Agent, Savannah Shane. *Id.* at ¶22. Ms. Shane accepted this trade request. *Id.*

21       Mr. Cobb used his travel privileges on July 9, 2019, to make a reservation for a

22   flight to Hawaii leaving on August 7, 2019. *Id.* at ¶ 21; Exhibit M. He used his privileges

23   to book another flight from Hawaii to Portland on August 11, 2019. *Id.* at ¶ 26.

24

25

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 3

On July 20, 2019, Alaska informed Mr. Cobb that Ms. Hameed was not qualified to cover his lead shift and therefore his August 9 trade was canceled. Dkt. 42, Garceau Decl,  at ¶23. He was told to find another trade to cover his shift. *Id.* Without finding another trade, Mr. Cobb traveled to Hawaii with his two cousins on August 7 using his travel privileges for both himself and one of his cousins. *Id.* at ¶24.

Mr. Cobb called out from work on August 9, 2019 and cited FMLA as his reason for being absent. *Id.* at ¶25. He called out again on August 12, 2019 citing FMLA and missed his scheduled shift that day. *Id.* Mr. Cobb had arrived in Portland, Oregon late evening on August 11, 2019. *Id.* at ¶26.

Mr. Cobb states he was ill in Hawaii and contacted a neurologist that week to discuss his symptoms. Dkt. 45, Plaintiff's Motion to Seal, at Exhibit 13. When Mr. Cobb returned to work on August 17, he was questioned about his absences on August 9 and August 12, and specifically his trip to Hawaii. Dkt. 42, Garceau Decl. at ¶27.

On August 26, Alaska formally discharged Mr. Cobb after conducting an investigation for violating the following rules of conduct: "Rule #1. Report to work as scheduled and on time…Rule #15. Falsification of records, concealing defective work, or misrepresentation of facts including time records and job applications will not be tolerated. Rule #31. Dishonesty such as theft or pilferage of company property, the property of our customers or employees, or the misappropriation of funds, or misrepresentation to obtain pay, benefits, or privileges including fraudulent use of sick leave will be grounds for dismissal….". *Id.* at Exhibit P.

After Alaska discharged Mr. Cobb from employment, he filed a grievance with the IAMAW, claiming that his termination violated FMLA laws. Dkt. 42-2, Declaration of

1    Laura Crisp at ¶3. On August 29, 2019, Alaska and IAMAW held the "first step hearing"

2    for Mr. Cobb's grievance. *Id.* at ¶4. Alaska issued its decision the following day. *Id.*

3    Neither Mr. Cobb nor the IAMAW pursued the grievance further. *Id.* at ¶5.

4         Mr. Cobb then filed a complaint with the Equal Employment Opportunity

5    Commission ("EEOC"). The EEOC concluded that it was unable to establish that Alaska

6    violated any statutes. Dkt. 44, Plaintiff's Response, at Exhibit 1, Declaration of Diondre

7    Cobb.

8         On April 27, 2019, Mr. Cobb filed a complaint against Alaska in King County

9    Superior Court. Dkt. 1. The case was removed to this Court on June 1, 2020. *Id.*

10                        II.    DISCUSSION

11         A.  Summary Judgment Standard

12         Summary judgment is supported if the materials in the record "show that there is

13   no genuine issue as to any material fact and the movant is entitled to judgment as a

14   matter of law." Federal Rule of Civil Procedure (FRCP) 56 (a). The moving party bears

15   the initial burden to demonstrate the absence of a genuine dispute of material fact for

16   trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine dispute concerning a

17   material fact is presented when there is sufficient evidence for a reasonable jury to

18   return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

19   252 (1986). In this context, materiality means the fact is one that is "relevant to an

20   element of a claim or defense and whose existence might affect the outcome of the

21   suit"; thus, materiality is "determined by the substantive law governing the claim." *T.W.*

22   *Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

23

24

25

1   The non-moving party is required to show that genuine issues of material fact

2   "'can be resolved only by a finder of fact *because they may reasonably be resolved in*

3   *favor of either party." California Architectural Building Prods., Inc. v. Franciscan*

4   *Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson,* 477 U.S. at

5   250) (emphasis in original). When the Court considers a motion for summary judgment,

6   "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to

7   be drawn in [their] favor." *Anderson,* at 255. Yet the Court is not allowed to perform the

8   jury's function – the Court may not weigh evidence, draw legitimate inferences from

9   facts, or decide credibility. *Id*.

10   If the moving party meets their initial burden, an adverse party may not rest upon

11   the mere allegations or denials of his pleading; his or her response, by affidavits or as

12   otherwise provided in FRCP 56, must set forth specific facts showing there is a genuine

13   issue for trial. FRCP 56(c). The Court may not disregard evidence solely based on its

14   self-serving nature. *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir. 2015).

15   "The district court can disregard a self-serving declaration that states only conclusions

16   and not facts that would be admissible evidence." *Id.*

17   B. Alaska's Requests to Strike

18   Alaska asks the Court to strike the following evidence: plaintiff's declarations

19   paragraphs 6-12 and 14-17, exhibits 2, 4-6, 9, 11, 14 and 18, and plaintiff's cousin, Eric

20   Layton's declaration paragraphs 2-6 and 9-14. Dkt. 48 at 3. "Factual disputes that

21   are irrelevant or unnecessary" to the claims at issue "will not be counted" when the court

22   considers granting summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

23   248 (1986); *see also T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

24

25

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 6

1  626, 630 (9th Cir. 1987) ("Disputes over irrelevant or unnecessary facts will not preclude

2  a grant of summary judgment."). But that does not mean that irrelevant facts must

3  be stricken from a summary judgment motion. *Compare* Fed. R. Civ. P. 56 (no section

4  on striking "irrelevant" portions of summary judgment motion), *with* Fed. R. Civ. P. 12(f)

5  ("The court may strike from a pleading an insufficient defense or any redundant,

6  immaterial, impertinent, or scandalous matter.").

7         Any irrelevant facts will remain simply that—irrelevant—and will not influence the

8  court's consideration of the motion's merits. Thus, the Court denies Alaska's request to

9  strike the aforementioned paragraphs and exhibits.

10        As for the remaining exhibits and paragraphs that Alaska seeks to strike, at

11  the summary judgment stage, the Court does "not focus on the admissibility of the

12  evidence's form," but rather on the admissibility of its contents. *Fraser v. Goodale*, 342

13  F.3d 1032, 1036 (9th Cir.2003). The contents in the declarations and exhibits can be

14  admitted into evidence at trial in a variety of ways. Thus, the Court denies Alaska's

15  request to strike the remaining exhibits and paragraphs of plaintiff's and Mr. Layton's

16  declarations.

17                    C. <u>Exhaustion of Administrative Remedies</u>

18        Alaska argues that plaintiff's federal discrimination claims must be dismissed

19  because he failed to file a charge of discrimination with the EEOC pursuant to 42 U.S.C.

20  § 12117. Dkt. 41 at 12. Yet Mr. Cobb did file a charge of discrimination with the EEOC.

21  Dkt. 44, Plaintiff's Response, at Exhibit 1, Cobb Decl. Alaska acknowledged this

22  oversight and instead presented a new argument on reply that Mr. Cobb's claims should

23  be dismissed because they are barred by the relevant statute of limitations. Dkt. 48 at 8.

24

25

On January 31, 2022, this Court entered a Minute Order providing the parties additional time to file supplemental briefing solely on the issue of whether any or all of Mr. Cobb's claims are barred by the relevant statute of limitations. Dkt. 55. Alaska did not file a supplemental brief by the Court's deadline. Thus, the Court declines to consider Alaska's statute of limitations argument presented for the first time in its reply brief. Dkt. 48 at p. 8.

D.   Americans with Disabilities Act, and Washington Law Against Discrimination

"Whether a person is disabled under the ADA is an 'individualized inquiry.'" *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Under the ADA, an "individual with a disability" is covered by the protections of the statute. 42 U.S.C. §§ 12101, 12102(1). The ADA prohibits employers who are covered by the statute from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures,  the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a). A "qualified individual" is defined as "an individual  who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA definition of "disability" is "a physical or mental impairment that substantially limits one or more major life activities of [an] individual; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102(1).

Claims of discrimination under the ADA are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *Snead v. Metropolitan Property & Cas. Ins. Co.,* 237 F.3d 1080, 1092-1094 (9th Cir. 2001).

Regarding discharge, the plaintiff must establish a prima facie case that he was discharged on the basis of a disability; the employer is then required to introduce admissible evidence of a legitimate non-discriminatory reason for the discharge; if that evidence is introduced, then the burden shifts back to the plaintiff to produce evidence and carry the burden of persuasion that the employer's proffered reason is a pretext. *Snead v. Metropolitan Property & Cas. Ins. Co.,* 237 F.3d 1080, 1092-1094 (9th Cir. 2001).

Regarding plaintiff's claim of retaliation, under the ADA, 42 U.S.C. § 12203(a), "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." With respect to the retaliation cause of action, the Title VII burden-shifting framework of *McDonnell Douglas* applies. *T.B. ex rel. Brenneise v. San Diego Unified School Dist.,* 806 F.3d 451, 472-473 (9th Cir. 2015).

The plaintiff must present a prima facie case "(a) that he or she was engaged in protected activity, (b) that he or she suffered an adverse action, and (c) that there was a causal link between the two." *Emeldi v. Univ. of Or.,* 673 F.3d 1218, 1223 (9th Cir. 2012). The standard for determining whether a causal link exists is but-for causation. *T.B. ex rel. Brenneise v. San Diego Unified School Dist.,* 806 F.3d at 473. If the plaintiff makes a prima facie showing, then the burden shifts to the defendant to offer legitimate

1    reasons for the adverse action. *See, Hashimoto v. Dalton,* 118 F.3d 671, 679-680 (9th

2    Cir. 1997). Proximity in time is not, standing alone, sufficient evidence to refute

3    proffered legitimate reasons. *See Hashimoto v. Dalton,* at 680. Making a prima facie

4    showing is a necessary, but not a sufficient condition for surviving a motion for summary

5    judgment. *T.B. ex rel. Brenneise v. San Diego Unified School Dist.,* 806 F.3d at 473.

6         The Washington Law Against Discrimination (WLAD) prohibits an employer from

7    discharging an employee because of certain protected characteristics, including a

8    "sensory, mental, or physical disability." RCW 49.60.180(2). Violation of this provision

9    supports a discriminatory discharge claim. *See Mikkelsen v. Pub. Util. Dist. No. 1 of*

10   *Kittitas County*, 189 Wash.2d 516, 526 (2017). The WLAD also prohibits an employer

11   from retaliating against an employee for opposing any discriminatory practices forbidden

12   by the WLAD. RCW 49.60.210. *See Cornwell v. Microsoft Corp.*, 192 Wash.2d 403, 411

13   (2018). Because direct evidence of discriminatory intent is rare, an employee "may rely

14   on circumstantial, indirect, and inferential evidence to establish discriminatory

15   action." *Mikkelsen*, 189 Wash.2d at 526.

16        Where the employee lacks direct evidence, Washington has adopted the three-

17   step evidentiary burden-shifting framework announced in *McDonnell Douglas Corp. v.*

18   *Green*, 411 U.S. 792 (1973) for discriminatory discharge claims. *Mikkelsen*, 189

19   Wash.2d at 526-27; *Scrivener v. Clark Coll.*, 181 Wash.2d 439, 445-46 (2014).

20        The evidentiary burden-shifting framework under WLAD is the same for

21   retaliation claims as for discrimination claims. *Cornwell*, 192 Wash.2d at 411. And the

22   same general framework applies to wrongful discharge in violation of public policy

23   claims. *Martin v. Gonzaga Univ.*, 191 Wash.2d 712, 725-26 (2018).

24

25

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 10

First, an employee must make a prima facie case of discriminatory discharge by showing they were: (1) within a statutorily protected class, (2) discharged by the defendant, and (3) doing satisfactory work. *Mikkelsen*, 189 Wash.2d at 527, 404 P.3d 464. Where the employee establishes a prima facie case, a rebuttable presumption of discrimination exists. *Id.* The requisite degree of proof necessary to establish a prima facie case is minimal. *See Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 659 (9th Cir. 2002).

Second, the burden shifts to the employer, who must " 'articulate a legitimate, nondiscriminatory reason'" for the discharge. *Id.* The employer is not required to persuade the court that it actually was motivated by the nondiscriminatory reason, only that the employer's evidence if taken as true would permit the conclusion that there was a nondiscriminatory reason.  *Id.* at 533.

Third, if the employer meets this burden, the employee must produce sufficient evidence showing that the employer's alleged nondiscriminatory reason for the discharge was a "pretext." *Id.* at 527. " An employee may satisfy the pretext prong by offering sufficient evidence to create a genuine issue of material fact either: (1) the defendant's reason is pretextual or (2) although the employer's stated reason is legitimate, discrimination nevertheless was a substantial factor motivating the employer.'" *Id.* The employee is not required to show that discrimination was the only motivating factor for the discharge because an employer's decision may be based on both legitimate and illegitimate reasons.  *Id.* at 534.

1    Here, Mr. Cobb has no direct evidence that Alaska terminated him because of his

2  disability, as retaliation, or in violation of public policy. Therefore, the *McDonnell*

3  *Douglas* burden-shifting framework applies.

4    The parties dispute whether Mr. Cobb was within a statutorily protected class and

5  whether he was doing satisfactory work.  Alaska simply states that Mr. Cobb does not

6  have a disability. The ADA definition of "disability" is "a physical or mental impairment

7  that substantially limits one or more major life activities of [an] individual; a record of

8  such an impairment; or being regarded as having such an impairment." 42 U.S.C. §

9  12102(1).Under the WLAD, a "disability" means the "presence of a sensory, mental, or

10  physical impairment that: (i) is medically cognizable or diagnosable; or (ii) exists as a

11  record or history; or (iii) is perceived to exist whether or not it exists in fact." RCW

12  49.60.040 (7)(a). Mr. Cobb only states that he suffers from a "health condition," but does

13  not specify what those conditions are or how those conditions qualify as a disability

14  under WLAD.

15    With respect to whether Mr. Cobb established that he was doing satisfactory

16  work, Mr. Cobb states that he was ill during the time in question and did not fraudulently

17  use his FMLA leave. Dkt. 45 at 8. Alaska presents evidence that Mr. Cobb's work was

18  not satisfactory and terminated Mr. Cobb after conducting an investigation, which

19  concluded that Mr. Cobb violated Alaska's Rules of Conduct.

20    Despite the ambiguity about the nature of Mr. Cobb's alleged disability, and

21  Alaska's evidence that Mr. Cobb's work was not satisfactory, when reviewing a

22  summary judgment motion the Court draws all reasonable inference in favor of the non-

23  moving party; Mr. Cobb's declaration must be taken as true. *Keck v. Collins*, 184

24

25

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 12

1    Wash.2d 358, 368 (2015). Thus, for purposes of summary judgment, the Court will

2    analyze the case by assuming Mr. Cobb established a prima facie case that he was

3    disabled and that he has presented a prima facie case of discriminatory discharge.

4         Assuming Mr. Cobb made a prima facie case, the burden shifts to Alaska.  For

5    this stage in the *McDonnell Douglas* framework, the employer only has a burden of

6    production, not persuasion, and is not required to persuade the court that it was actually

7    motivated by the nondiscriminatory reasons. *Mikkelsen*, 189 Wash.2d at 533. The

8    employer need only introduce " 'evidence which, *taken as true*, would *permit* the

9    conclusion that there was a nondiscriminatory reason for the adverse

10   action.'" *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).

11        Here, Alaska met its burden to show a legitimate, non-discriminatory reason for

12   discharging plaintiff. The defendant submitted evidence that the reason Alaska

13   terminated Mr. Cobb was because Alaska found that Mr. Cobb fraudulently invoked the

14   FMLA on August 9, 2019 and August 12, 2019 when actually his absences were part of

15   a pre-planned trip to Hawaii, and he did not consult with Alaska prior to leaving for his

16   trip about invoking FMLA on August 9 or August 12.

17        Further, in his deposition, Mr. Cobb admitted that he had "no plans of being at

18   work" the week of August 9, 2019 through August 12, 2019. Dkt 42 at  Exhibit B, 174:18-

19   21. He also knew that when he left for Hawaii on August 7, 2019, he did not have

20   coverage for his August 9 shift. *Id.* at 166:4-11. The evidence shows there is no genuine

21   dispute of material fact that there was a nondiscriminatory reason for terminating

22   plaintiff. The defendant has met its burden of production, and no reasonable jury could

23   find for plaintiff on this issue.

24

25

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 13

1      Because Alaska met its burden, the final step of the *McDonnell Douglas*

2  framework shifts the burden back to plaintiff, to establish pretext.  The ways that an

3  employee can show that a stated reason for termination was a pretext include, but are

4  not limited to, "that the reason has no basis in fact, it was not really a motivating factor

5  for the decision [or] it lacks a temporal connection to the decision or was not a

6  motivating factor in employment decisions for other employees in the same

7  circumstances." *Kuyper v. Dep't of Wildlife*, 79 Wash. App. 732, 738-39, 904 P.2d 793

8  (1995)).

9      Mr. Cobb argues that his presented evidence is sufficient to establish a genuine

10  question of material fact as to pretext because, he asserts, the investigation's findings

11  were not accurate and thus, Alaska's stated reason for terminating him had no basis in

12  fact. Specifically, plaintiff claims that Alaska's findings were false in light of the fact that

13  plaintiff "reached out to a referred neurologist that same week complaining of his

14  symptoms" and he filed an application with the Employment Security Department (ESD)

15  to obtain unemployment benefits. *See* Dkt. 44 at Exhibits 13, 15.

16      Plaintiff argues that "the [ESD] stated that Plaintiff was terminated for taking sick

17  leave that Plaintiff was paid for and that the defendant broke several State laws in doing

18  so." *Id.* at Exhibit 15; Dkt. 44 at 5. Plaintiff also claims that Alaska did not state in the

19  termination letter that his employment was terminated because he fraudulently invoked

20  FMLA leave and it was instead due to unsatisfactory attendance. Dkt. 45 at 8.

21      However, none of the evidence that Mr. Cobb relies on shows that Alaska's

22  reason for terminating him – i.e., dishonesty in invoking FMLA -- was a pretext for

23  discrimination. First, even though Mr. Cobb submitted his neurologist referral form, he

24

25

nonetheless did not intend to be at work due to his pre-planned trip to Hawaii. Even if this pre-planned trip to Hawaii was, in some way, related to his illness, plaintiff did not consult with Alaska before leaving for his trip on August 7.

Further, plaintiff's termination letter detailed the events leading up to and during plaintiff's Hawaii trip and then explained that Alaska was terminating him for failure to report to work as scheduled, for falsifying records or misrepresenting facts, dishonesty, and misrepresentation to obtain pay, benefits or privileges. Dkt. 42 at Exhibit P.

Finally, with respect to the Employment Security Department application plaintiff submitted after he was terminated, the letter he received in return states, in part, "the company determined, after a review of the facts and circumstances, that claimant failed to comply with company policies and meet the company's expectations regarding work related behavior and performance." This is not inconsistent with Alaska's termination letter, and it did not assert that Alaska "broke several state laws." Dkt. 44 at Exhibit 15.

Mr. Cobb did not present any evidence to dispute that Alaska actually concluded, based on uncontroverted facts from the investigation, that he violated Alaska's rules of conduct. And he did not present any evidence that this conclusion was not the actual reason he was terminated. Thus, there is no genuine issue of material fact regarding whether Alaska's reason for terminating Mr. Cobb was pretextual, and the Court grants Alaska's motion for summary judgment on this claim.

Plaintiff has failed to present evidence supporting his claim of ADA or WLAD retaliation. There is no evidence indicating that prior to his termination plaintiff opposed any practice made unlawful by or the ADA or the WLAD, or that the defendant took negative employment action because plaintiff instituted or participated in ADA or WLAD

proceedings or inquires. Accordingly, no reasonable jury could conclude that

defendant retaliated against plaintiff for opposing any practice made unlawful by

the ADA or WLAD, or for participating in or instituting ADA or WLAD proceedings.

Summary judgment on the retaliation claim is therefore appropriate.

E.  FMLA and WFLA Claims

The Family Medical Leave Act, 29 U.S.C. § 2615(a), created two interrelated,

substantive rights: (1) the employee has a right to use certain amounts of leave for

protected reasons, and (2) the employee has a right to return to his or her job or an

equivalent after using protected leave. *Sanders v. City of Newport,* 657 F.3d 772, 777

(9th Cir.2011). The FMLA places an affirmative burden on an employer to notify

employees of their rights under the Act. *Bushfield v. Donahoe,* 912 F.Supp.2d 944, 952

(D. Idaho 2012).

Under Section 2615(a)(2) it is unlawful for employers to retaliate or discriminate

against a person for opposing any violation of their right to take FMLA-protected  leave.

Section 2615(a)(1) makes it unlawful for an employer to "interfere with, restrain or deny"

the exercise or attempt to exercise FMLA leave. The Washington Family Leave Act

"mirrors its federal counterpart and provides that courts are to construe its provisions in

a manner consistent with similar provisions of the FMLA." *Washburn v. Gymboree*

*Retail Stores, Inc.,* No. C11-822RSL, 2012 WL 5360978, *7(W.D.Wash. Oct. 30, 2012).

1.  Interference Claim

29 C.F.R. § 825.220(a)(1) provides that "[a]n employer is prohibited from

interfering with, restraining, or denying the exercise of (or attempts to exercise) any

rights" under the FMLA. To prevail on a claim of interference, the employee "need only

prove by a preponderance of the evidence that [the] taking of FMLA-protected leave constituted a negative factor in the decision to terminate." *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1125; *see also* 29 C.F.R. § 825.220(c) ("[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies."). A plaintiff may prove their claim by using either direct or circumstantial evidence, or both. *See Bachelder*, 259 F.3d at 1125.

As previously discussed, Alaska presented evidence that it terminated plaintiff for dishonesty in requesting FMLA leave. Plaintiff has a history of receiving FMLA leave without any negative repercussions from Alaska.

Plaintiff argues that he has brought evidence showing he was not dishonest in taking FMLA leave because he was ill during his trip. But plaintiff's allegation of illness during the Hawaii trip does not support an inference that Alaska impermissibly used plaintiff's taking of FMLA leave as a factor in the decision to terminate plaintiff. Plaintiff has provided no basis for the Court to infer that Alaska relied on anything other than plaintiff's dishonesty , i.e., that his absences were part of a pre-planned trip to Hawaii rather than an illness -- -- and dishonesty is a lawful basis for termination.

Therefore, no reasonable fact finder could determine that plaintiff's taking FMLA-protected leave was a negative factor in Alaska's decision to terminate his employment. The Court grants Alaska's motion for summary judgment on plaintiff's FMLA interference claim.

2.  Retaliation Claim

The FMLA contemplates two types of retaliation claims. First, the FMLA prohibits an employer from "discriminat[ing] against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(2). Second, the FMLA prohibits an employer from discriminating against any individual for instituting or participating in FMLA proceedings or inquiries. 29 U.S.C. § 2615(b).

Plaintiff does not present evidence supporting either type of retaliation. There is no evidence indicating that prior to his termination plaintiff opposed any practice made unlawful by FMLA or that he instituted or participated in FMLA proceedings or inquires. Accordingly, no reasonable jury could conclude that defendant retaliated against plaintiff for opposing any practice made unlawful by the FMLA or for participating in or instituting FMLA proceedings. Summary judgment on this claim is therefore appropriate.

F.   RCW 49.46.210

RCW 49.46.210 provides that employees in the State of Washington shall accrue at least one hour of paid sick leave for every forty hours worked. RCW 49.46.210(1)(a). Further, "[a]n employer may require employees to give reasonable notice of an absence from work, so long as such notice does not interfere with an employee's lawful use of paid sick leave." RCW 49.46.210(f). An employer may require verification that an employee's use of paid sick leave is for an authorized purpose if the absence exceeds three days. RCW 49.46.210(g).

Alaska presented evidence to show that it did not discipline Mr. Cobb for taking any protected sick leave nor was Mr. Cobb denied protections under Washington's paid sick leave law. Dkt. 42 at ¶8, 9, 18, 29. Further, plaintiff testified during his deposition that he only "felt like" he did not get paid his protected sick leave. *Id.* at Exhibit A,

155:11-15. Plaintiff did not have a specific number, nor did he have any records to show which specific days he may have challenged. *Id.* at 156:9-19.

Mr. Cobb's "hunch" without more is insufficient to defeat summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (explaining that in response to a motion for summary judgment, "the nonmoving party must do more than show there is some metaphysical doubt as to the material facts at issue"); *Harper v. Wallingford,* 877 F.2d 728, 731 (9th Cir.1989) (noting that a "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists will not preclude summary judgment). Thus, the Court grants Alaska's motion for summary judgment on this claim.

## II.   <u>CONCLUSION</u>

Based on the foregoing, the Court grants summary judgment for Alaska on all claims. Thus, plaintiff's complaint is dismissed with prejudice.

Dated this 14th day of March, 2022.

*Theresa L. Fricke*
_____
Theresa L. Fricke
United States Magistrate Judge

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 19